## Eble *v.* Jones, Appellant.

Argued November 20, 1945. Before BALDRIGE, P. J., RHODES, RENO, DITHRICH, ROSS and ARNOLD, JJ. (HIRT, J., absent).

*John P. Connelly,* with him *John L. DuBois,* for appellant.

*Edward G. Biester,* with him *Edwin Booth* and *Vanartsdalen & Biester,* for appellee.

OPINION BY RENO, J., December 12, 1945:

Plaintiff instituted this equity proceeding, alleging a prescriptive right of way over defendant's land; and

praying for, inter alia, an injunction requiring defendant to remove all obstructions from the right of way and restore it to a usable condition; to restrain defendant from maintaining any such obstructions or interfering in any way with the free use of the roadway, and damages for loss suffered by reason of the said obstruction.

After hearing, the learned chancellor, supported by overwhelming evidence, found that a legal easement over the property, in fact, existed, and granted the prayer. He awarded damages in the amount of $630, which was the undisputed rental value of the property during the period plaintiff was deprived of its use by reason of the obstructions placed upon the roadway by defendant.

Defendant filed numerous exceptions to the decree, and these were subsequently dismissed by the court en banc. In affirming the learned chancellor, the court said: "There being ample evidence to support this finding by the chancellor, we are bound by his finding as being equivalent to the finding of a jury. . . ." Defendant then took this appeal. Defendant here limits her argument to the application of the Act of April 25, 1850, P. L. 569, §21, 68 PS §411, and the right of the court to assess damages.

The Act of 1850 provides, in part: "No right of way shall be hereafter acquired by user, where such way passes through uninclosed woodland; but on clearing such woodland, the owner or owners thereof shall be at liberty to enclose the same, as if no such way had been used through the same before such clearing or inclosure." This act has no application to the case at bar. The chancellor found as a fact, which is fully supported by the evidence: "No part of said driveway or easement now passes, or heretofore passed through uninclosed woodland on the premises of the Defendant within the general or common meaning of the term 'woodland' or within the meaning of that term as used in the Act of April

25, 1850, P. L. 569, §21." This finding was supported by the testimony of all the witnesses who were familiar with the property for upwards to sixty years, and who agreed that the growth on the property in question consisted only of sparse underbrush and two or three trees. There is also absolute affirmative testimony that the premises never contained woodland. It was certainly not the intent of the legislature to include such brush within the term woodland and the purview of the act.

The fact that the right of way ran through woodland on the *plaintiff's* premises is entirely immaterial. The Act of 1850 was obviously intended to protect uninclosed woodlands against claims of prescriptive rights arising from adverse user. It was enacted to change prospectively the rule of law first announced in *Worral v. Rhoads,* 2 Wharton 427, and adhered to as late as *Reimer v. Stuber,* 20 Pa. 458, and that was its sole purpose. Nothing contained in the act prohibits the owner from establishing a road on his own uninclosed woodland even if it is a continuation of the right of way secured by prescription upon his neighbor's land.

Defendant, to support her theory that the Act of 1850 applies, relies principally upon *Kurtz v. Hoke,* 172 Pa. 165, 173, 33 A. 549, where it was said: "To hold, that because it [the roadway] runs for any distance through improved land, therefore it draws with it the right through uninclosed woodland, leaves the act of 1850 nothing . . . to operate on. The act is so plain, that it admits of but one meaning, viz: that a right by prescription to a road through uninclosed woodland cannot be obtained." This case is easily distinguished from the case at bar. There the roadway ran through improved land and thence continued through uninclosed woodland such as was intended to be included under the act, and the court properly denied the existence of a prescriptive right of way through the woodland. In this case, defendant's property contains no woodland which comes within the purview of the act, and its provisions cannot

be here invoked. And, as already demonstrated, the woodland upon plaintiff's premises is not within the sweep of the Act of 1850 and therefore not within the scope of the Kurtz decision.

Defendant also complains that there was no basis for the court to award damages; here, too, her position is untenable. That a court of equity can and will award damages is so fundamental a rule that it cannot be seriously questioned. In *Allison and Evans' Appeal*, 77 Pa. 221, at p. 227, Mr. Justice WILLIAMS speaking for the Supreme Court said: ". . . it is well settled, as a general principle, that where a court of equity has obtained jurisdiction for one purpose it may retain it generally for relief. . . . To prevent multiplicity of suits, the court will decree an account of the damages . . . at the same time with an injunction, and proceed to make a complete decree, so as to settle the entire controversy between the parties." The chancellor had the undisputed testimony of a real estate expert as to the rental value of the property for the period involved. He properly based his assessment thereon.

Decree affirmed; costs to be paid by appellant.