## Baptist Church in the Great Valley v. Urquhart, Appellant.

Argued January 8, 1962.  Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Francis T. Anderson,* for appellants.

*John O. Platt, Jr.,* with him *MacElree, Platt & Marrone,* for appellee.

OPINION BY MR. JUSTICE EAGEN, March 13, 1962:

This is an appeal from a final decree in equity restraining the defendant-appellants from constructing a road over a right of way reserved by the terms of a deed.

. The relevant facts, supported by the testimony and as found by the chancellor and affirmed by the court en banc, may be summarized as follows:

The plaintiff-appellee, The Baptist Church in the Great Valley, located in Tredyffrin Township, Chester County, Pennsylvania, was established about the year 1772. In December 1946, its land consisted of approximately seven acres improved with the church edifice. A portion of the land was used as a cemetery.

The defendant-appellants, Radcliffe Morris Urquhart and Marian W. Urquhart, his wife, were the owners of two separate noncontiguous tracts of land abutting in part on the church property, which in December 1946, they conveyed to the church without the payment of monetary consideration. Their beneficence was prompted by a desire to extend and preserve the church property and its historical background.

One tract, hereinafter designated as Tract No. 2, contained about 1.75 acres and abutted Valley Forge Road. The other tract, hereinafter designated as Tract No. 1, contained 5.21 acres.

The defendant-appellants owned other lands situated to the east and north of the tracts they conveyed to the church, and in the deed of conveyance they ex-

pressly reserved a right of way, thirty feet wide, over the tracts conveyed, extending along the northerly boundary line thereof. This was for the purpose of ingress and egress from Valley Forge Road to the lands on the east that they continued to own. The reservation specifically gave them the right to construct and maintain a road over the right of way. However, the right given by the reservation was not asserted until late in the year of 1959, and the construction or use of a roadway over the thirty foot strip was never attempted until the year of 1960.

Moreover, the tracts conveyed had no common boundary line, were not contiguous, hence, the land reserved for the right of way was not continuous. In fact, the two tracts were and are separated by a corner of the land originally owned by the church which forms a triangular wedge. This area is a portion of the land used for burial and cemetery purposes.

In the deed from the appellants to the church, there were no terms which purported to create an easement in favor of the appellants over the originally owned church property.

In the year 1953, the church constructed a parsonage on Tract No. 2 of the land conveyed to it by the appellants. The northeast corner of this building extends out and encroaches over about two inches upon the thirty foot right of way reserved as outlined before. The appellants knew from the beginning of the construction of the parsonage and its exact location, but made no protest.

Also, in 1953, the church constructed another building on the same tract upon which the parsonage is located. This is used in part as a Sunday school building. Since the construction of this building, the church has improved and used a portion of the area of the reserved right of way for the purpose of a driveway leading to the building.

In 1959, the appellants, for the first time, protested the encroachment by the church upon the area reserved for the right of way. In 1960, they caused a line of stakes to be erected and indicated an intention to construct a thirty foot road over the land reserved, leading to lands they own to the east, which now are to be developed as an industrial park.

In this action, the church sought and secured an order enjoining the construction of the road. This appeal followed.

The lower court concluded: (1) That the appellants do not now and never had the right to use the lands originally owned by the church, particularly that portion which separates the two tracts involved; (2) That the entire right of way being unattained and unattainable because of its interception by land in which appellants enjoy no rights, falls as a whole and, therefore, the appellants cannot use any portion of the right of way; (3) That appellants' right of way over Tract No. 2 was extinguished by estoppel.

We shall discuss each question separately.

We agree completely with the lower court's conclusion that the appellants have no right to use any of the land originally owned by the church. " 'A reservation is the creation of a right or interest which had no prior existence as such in a thing or part of a thing granted. It is distinguished from an exception in that it is a new right or interest. An exception is always of part of the thing granted, it is of the whole of the part excepted. A reservation may be of a right or interest in the particular part which it affects.' " *Lauderbach-Zerby Co. v. Lewis*, 283 Pa. 250, 254, 129 Atl. 83 (1925). Appellants conveyed to the church the entire title to the two tracts of land, reserving only a right of way across each. See, *Hoffmaster v. Baird*, 87 Pa. Superior Ct. 369 (1926).

By its express terms, the reservation was limited to the two tracts conveyed. These terms specifically impose it only upon "the two tracts of land hereby conveyed." Further, the defendants could not "reserve" an easement across lands they did not own. If the words of a deed are sufficiently clear to define the character and extent of a reservation, they speak for themselves and there is no room for construction against a grantor and in favor of a grantee: *Walker v. Walker*, 153 Pa. Superior Ct. 20, 33 A. 2d 455 (1943). They take their plain meaning in establishing the intent of the parties and the nature and extent of the easement: *Witman v. Stichter*, 299 Pa. 484, 149 A. 2d 725 (1930). There are definitely no terms in the deed involved purporting to create an easement over the original lands of the church. Nor can any easement arise by implication. The necessary elements to establish an implied easement were reiterated in *Spaeder v. Tabak*, 170 Pa. Superior Ct. 392, 395, 85 A. 2d 654 (1952). " 'To establish an easement by implication on the severance of the unity of ownership in an estate there must be (1) a separation of the title, (2) such continuous and obvious user before the separation as to show an intention to make the alleged easement permanent, (3) the easement must be necessary to the beneficial enjoyment of the land granted or retained; and (4) the servitude should be continuous and self-acting. Becker v. Rittenhouse, 297 Pa. 317, 325, 147 A. 51.' " Here there was no severance of title, since defendants had never owned the original church property, and the chancellor properly found that there had been no pre-existing use of a right of way across this property.

The appellants urge, as they did in the court below, that a mutual mistake of fact existed in that both parties believed that the tracts conveyed were contiguous. The court below found to the contrary. The chancel-

lor, with full opportunity to observe the appellant-husband testify and appraise his credibility, found that his "protestation of ignorance overtaxes credulity." As further noted by the chancellor in his adjudication, "Had that been true as to defendants there would have been no occasion for them to prepare a deed describing the two tracts separately, *with no common boundary.* Previously defendants had obtained access from Valley Forge Road to Tract No. 1 and their remaining lands on the east only by passing under license across lands of Philadelphia Electric Company lying north of plaintiff's original property and of both tracts conveyed. Without doing so defendants had no access to their interior lands from that road, and beyond doubt defendants knew that to be the fact."

Furthermore, it occurred to the Chairman of the Board of Trustees of the appellee on examining the deed in 1946, although he had never seen a plot of the properties, that they were separated by the church premises but he, as a layman, thought that made no difference. Hence, the mistake of fact, if any, was at best unilateral.

However, we do not agree with the court below that the purpose of the right of way is unattainable and, therefore, the right is defeated in its entirety. While the appellants have no right to use the originally owned property of the church as stated above, it does appear that they can acquire a license to use lands owned by the Philadelphia Electric Company, lying immediately to the north of Tract No. 2. If this is accomplished, then the right of way reserved in the deed could be made continuous and usable. Equitable principles would indicate that the opportunity to do this should be afforded.

In concluding that the right of way fell as a whole, the lower court relied upon the case of *Trexler v. Lutz,* 180 Pa. Superior Ct. 24, 118 A. 2d 210 (1955). In

*Trexler*, an easement by prescription was claimed by Trexler to use a road over the lands of Lutz, partly over his fields and partly over his unenclosed woodland to the contiguous woodland of Trexler's. The Act of April 25, 1850, P. L. 569, §21, 68 PS §411, provides that a right of way through a woodland cannot be acquired by prescription. In holding that the right of way fell, the Superior Court stated, at 27, 28: "We agree with the court below that the right of way stands or falls as a whole. . . . '. . . The use limits the servitude; the servitude failing because of the statutory noneffect of the use over defendants' woodland, it is plain that the entire and sole object of the servitude is unattained and unattainable. Therefore, no easement can remain such as would begin at the highway, cross defendants' fields, and terminate at the entrance point from defendants' fields to defendants' woodland. Such a right of way was never contemplated or created.' "

In *Trexler*, the right of way came to a dead end and could not possibly serve any useful purpose. Such is not the fact here. If the appellants can secure a license to use a small portion of the electric company's land, then the right of way will serve a useful purpose. Further, as noted before, the chancellor found that the appellants had previously passed around the appellee's original property under a license from and over the lands of the Philadelphia Electric Company.

The lower court in holding that the appellants' right of way was extinguished by estoppel, relied on 3 Powell, Property, §425, and Restatement, Property §505 (1944), which states: "An easement is extinguished when action is taken by the owner of the servient tenement inconsistent with the continued existence of the easement, if (a) such action is taken in reasonable reliance upon conduct of the owner of the easement; and (b) the owner of the easement might reasonably have foreseen such reliance and the consequent action; and

(c) the restoration of the privilege of use authorized by the easement would cause unreasonable harm to the owner of the servient tenement."

The chancellor also cited *Picconi v. Carlin,* 40 N. J. Super. 393, 123 A. 2d 87 (1956), upholding the principle of extinguishment of an easement by estoppel on the basis of §505. But, the facts in that case differ somewhat in that the restoration of the privilege of use authorized by the easement would require demolition of a dwelling which would, of course, cause unreasonable harm.

Also, although the facts of this case comply with (a) and (b) of §505, we do not feel that restoration or permission to use the right of way with specific limitations will cause the church unreasonable harm. We further believe that equity can and should be done to all parties involved.

It is obvious that if the appellants are permitted to use the full reservation of thirty feet and thereby take some two inches off of the parsonage, or to construct the proposed road within six inches of the parsonage, that an unreasonable harm would fall on the appellee because the parsonage will become uninhabitable. So, too, if the appellants were estopped altogether from using their easement over Tract No. 2, it would be an inequitable result, because they gave a substantial amount of land to the appellee as an outright gift, clearly reserving a thirty foot right of way. Therefore, after giving careful consideration to the rights and the conduct of the parties, and due weight to the equities involved, we feel that if the appellants are permitted to use only ten feet of the thirty foot right of way furthermost removed from the parsonage, while in its vicinity, coupled with adequate and proper fencing along Tract No. 2 to keep children from straying on the road, that the *unreasonable* harm to the appellee would cease to exist. Furthermore, the appellants

would suffer no substantial harm and any inconvenience experienced would be trivial. In constructing and maintaining the road, the appellants would simply be limited to a single lane of traffic within a reasonable distance of the parsonage (seventy-five feet on either side of the abutting northeast corner). Hence, the principle of estoppel should not be invoked.

The fact that appellants did not insist upon the use of the right of way for several years is not controlling. Mere nonuse, no matter how long extended, will not result in extinguishment of an easement created by deed, *Graham v. Water Power Corp.*, 315 Pa. 572, 173 A. 2d 311 (1934).

Decree reversed. The record is remanded for the purpose of entering an order consonant with this opinion. Each side to pay own costs.